Roy MECKE, Appellant,

v.

R. A. GRUBBS et ux., Appellees.

No. 6399.

Court of Civil Appeals of Texas.

Amarillo.

April 5, 1954.

Rehearing Denied May 17, 1954.

Minor L. Morgan and Ralph W. Currie, Dallas, for appellant.

Ungerman, Hill & Ungerman, Leonard E. Hoffman, Jr., and Wm. Madden Hill, Dallas, for appellees.

NORTHCUTT, Justice.

This is a child custody case filed by appellees, R. A. Grubbs and wife, against appellant, Roy Mecke. The child in question is Roy Christopher Mecke. Roy Mecke and wife, Helen Grubbs Mecke, are the parents of said child. Helen Grubbs Mecke is the daughter of appellees. Roy Mecke and Helen Grubbs were married on March 14, 1951, and the baby in question was born to this union on December 18, 1952. Roy Mecke was in the United States Air Force. His service was to end in February, 1954. On or about March 24, 1953, Helen Grubbs Mecke was arrested in Fort Worth, Texas, and charged with robbery of a national bank. At the time Helen was arrested she had the baby with her and after her arrest the baby was taken by the officers to Lena Pope Home in Fort Worth.

Immediately after learning of the arrest of his wife, the appellant communicated with the appellees and they all three went to the Lena Pope Home and got the baby and they all returned to the home of appellees. The baby has remained in appellees' home ever since.

On or about July 13, 1953, Helen Grubbs Mecke was convicted of bank robbery and sentenced to five years in the reformatory for women at Alderson, West Virginia. It was the plan or discussion between the appellant and appellees after the arrest of Helen Mecke that the appellees would take care of the baby and the appellant would use his money, time, and efforts preparing for the defense of Helen Mecke. After the conviction of Helen Mecke, the appellant went to his home in New York to talk to his father, attorneys, his pastor, and friends to try to get help in securing aid for his wife, Helen. Not being able to secure any relief for his wife, he returned to his base at Fort Worth and called appellees, telling them he wanted to come and get his baby. Appellee, Mrs. Grubbs, told him to come on and get the baby and that she would have the baby and its things ready. When appellant arrived at the appellees' home, the appellees had changed their minds and would not let him have the baby. Immediately thereafter the appellees filed this suit in the form of an injunction seeking to restrain the appellant from interfering with the custody of such child and also sought to have the child's custody left with appellees. Appellant answered and sought an action of habeas corpus against appellees requesting the delivery of said baby to the appellant. Upon a final hearing upon its merits, the court granted judgment vesting custody and possession of said child with the appellees and granted appellant the right to visit such child and to have such child with him away from the house of appellees, but in Dallas, Texas, every Sunday between the hours of 2:30 o'clock p. m. and 5:30 o'clock p. m. From this judgment appellant has perfected this appeal.

■ Since it is the contention of appellees that this court does not have jurisdiction of this appeal we will first discuss this point. Appellees contend that this is an appeal from an interlocutory order and cites Goodman v. Goodman, Tex.Civ.App., 224 S.W. 207, as an authority. In the Goodman case the order was issued as to the temporary custody of the child during the pendency of the suit for divorce *and until a final hearing.* (Emphasis ours.) In this case at bar the order was entered upon a final hearing and was not an interlocutory order. If appellees' contention be correct, one could never appeal from an order granting custody of a child because under changed conditions the custody of a child may always be changed. Appellees' contention as to this court not having jurisdiction is overruled.

■ Appellant presents his appeal upon thirteen assignments of error. His first assignment is that, "The evidence does not support the judgment of the court awarding custody of the child to the grandparents, Grubbs and wife." The law seems to be well settled in this state that the parents of a child have a paramount legal right to the care, custody and control of their child or children as against all other persons unless they each are legally unfit persons to have such child. Starnes v. Jost, Tex.Civ.App., 228 S.W.2d 563; Carter v. Cade, Tex.Civ. App., 236 S.W.2d 829. It is to be noticed here that this is not a contest between a man and his wife over the custody of their child. The mother of the child was in no way a party to this suit.

It is unfortunate that the custody of the child was apparently taken from its father solely because of errors of the mother of the child. She was not a party to this suit and neither was the child of an age when he could have a voice in the proceedings. There is nothing in the record to show anything concerning the life or rearing of the mother as to what might have caused her to err. But, there was considerable pleadings and evidence as to her errors. Since the mother of the child was in no way involved in this suit, the question is one as to the fitness of appellant and the appellees.

The only witness introduced during the entire trial was the appellant and he was called by the appellees. The greater portion of his testimony was concerning checks given by his wife and other things concerning her acts. The appellees did not take the witness stand and testify as to their ages or as to their ability to care for said child or reveal the kind of home they proposed to furnish for the child. It was not the duty of appellant to attack the appellees in any manner. The child was the son of appellant and he was entitled to the possession and custody of said child until it was shown that he was an unfit person to have custody of the child. There was considerable evidence introduced seeking to question the acts of appellant about going back home and advising with his father, friends, pastor, and attorney as to helping his wife. It has been said by good authority: "A wise son heareth his father's instructions. A fool despiseth his father's instructions."

The trial court, after hearing other evidence, asked the appellant if he had any other reason why he thought that appellees were unfit to have the child in their custody. The appellant's answer was as follows:

"Yes, because he is our son, mine and Helen's, we have nothing to say about it, somebody just takes your baby and that is it.

"I can't go in there and say, 'Well, now, he will wear this, he will go to bed at this time, or he will get up at this time.' It is just out of my hands. I might as well be a stranger and go visit him twice a week or something like that, and say, 'Hello.' I don't know what is going on there during the day; I don't know what kind of treatment he is getting. He is probably getting good treatment, but it is not the way I want it. I figure I will bring him up in the best way I can, and I think I can do it, and I just want him with me."

The father is entitled to have his child with him unless he is not a fit father. There is not one line of evidence in this entire record to show one thing against the fitness of this appellant as a father or to in any manner question his fitness to have the possession and custody of his son. The trial court in regard to the appellant stated, "I am assuming, in deciding this case, his character is good."

Judgment was entered in the trial court on October 2, 1953. Appellant was to be released from the Air Force in February, 1954. It was the intention of appellant to take his son and return to his home in New York or to Virginia when he was released from the service. Under this record we are unable to see any reason whatever to deprive this father of the possession and custody of his child. We approve of the holding in the case of Bradley v. Bradley, Tex.Civ.App., 199 S.W.2d 545, 546, where the court said:

"If a parent is not disqualified to have the care and custody of her child, the law presumes that it is to the best interest of the child that he, or she, should have custody, as against third parties. Clayton v. Kerbey, Tex.Civ. App., 226 S.W. 1117, error ref.; Swift v. Swift, Tex.Civ.App., 37 S.W.2d 241.

"It is wholly immaterial that the paternal grandparents were fit and suitable persons to be awarded the care and custody of their granddaughter, if the finding of the jury and the court that the mother was a fit and suitable person to be entrusted with her care and custody is supported by the evidence. There may be many suitable persons to be awarded the care and custody of a minor child, but this fact alone would not justify nor authorize a court to deprive a parent of the custody of his child."

Appellant's first point of error is sustained. Since sustaining the first assignment of error, the remaining points of error will not be discussed.

The judgment of the trial court is reversed and judgment here rendered that appellant have possession and custody of his child; Roy Christopher Mecke.