**McMULLEN OIL AND ROYALTY COMPANY, Inc., et al., Appellants,**

**v.**

**Lucian MOCZYGEMBA, Appellee.**

**No. 14050.**

Court of Civil Appeals of Texas.

San Antonio.

Feb. 20, 1963.

Rehearing Denied March 20, 1963.

Cox, Smith & Smith, San Antonio, for appellants.

Ronald Smallwood, Karnes City, for appellee.

POPE, Justice.

This is an action to cancel a mineral deed. The jury found that the grantee fraudulently induced the grantors to execute the deed. The legal problem is one of limitations.

Frank Moczygemba and wife, Julia, executed and delivered a mineral deed to H. J. McMullen on October 10, 1929. The deed conveyed fifteen-sixteenths of the oil, gas and other minerals in 150 acres of land in Karnes County, Texas. Twenty-six years later this suit was filed; six and one-half years later it was tried. During the pendency of the suit, Frank and Julia Moczy-

gemba assigned their rights to their son Lucian, who is plaintiff. McMullen Oil and Royalty Company, Inc., is successor to H. J. McMullen. The jury found that H. J. McMullen fraudulently represented that the instrument was an oil lease and not a mineral deed. The grantors understood and spoke Polish but little English.

The jury found that McMullen orally represented that the instrument was an oil lease, (2) that the representation was false, (3) that McMullen knew it was false, (4) and intended that grantors should rely upon it, (5) that grantor and his wife did rely upon it, and (6) would not have signed the deed if the representation had not been made to them. Two defensive issues were also answered for the plaintiff. The jury found that Frank Moczygemba did not discover the fraud within four years of the time he filed his suit, and also that neither Frank nor Julia Moczygemba had such information as would have caused a reasonably prudent person in the exercise of reasonable diligence, to inquire into and learn that the instrument was not an oil and gas lease. It is our opinion that all of the evidence, without dispute, shows that both Frank and Julia Moczygemba had information that would cause a reasonably prudent person to inquire about and learn the true nature of the instrument.

There were few witnesses. The grantor, Frank Moczygemba, was incompetent at the time of trial. The grantee, McMullen, was dead. The notary public was dead; the man who interpreted from English to Polish, so Frank Moczygemba and his wife could understand, was dead. Henry, the grantors' son, was fifteen years of age at the time of the transaction in 1929, and he testified. His mother, Julia, one of the grantors, testified. Henry recalled that he and his father were pulling corn, thirty-two years earlier, when H. J. McMullen and Joe Manka, an interpreter, met them at the end of a corn row. McMullen said he was there for the purpose of leasing the land "because we want to drill an oil well here." Moczygemba was reluctant, his son

said, because "he wasn't sure that an oil well would be drilled and he wanted to be sure that it was drilled." Several times, such assurances were given in both English and Polish. Fifteen or twenty minutes later Moczygemba agreed to lease the land for fifty cents an acre cash. McMullen said that every sixteenth barrel of oil would go to Moczygemba, and there would be an oil well soon. Not once, but repeatedly, the son testified that McMullen said he would drill a well soon, and that "it wouldn't take long, because * * * otherwise Daddy wouldn't have signed it." Julia Moczygemba stated that the reason she signed the instrument was "because I have been promised that they soon would be drilling for oil." "The only thing that he promised, that they would soon drill a well." No other promises except promises of drilling a well soon. She said that she would not have signed "unless they would promise to drill right away." When asked what was meant by "soon," she said, "They talked about when it meant, to them is right away, either this month or next month." This testimony is not explained, retracted, or altered in any way. All the evidence is, that they signed because they relied upon McMullen's representation that they would "soon" see a well drilled on their farm. This state of the record has significance, although the jury findings upon the fraud issues related to a different representation. The importance of the evidence is that it shows knowledge of facts which both grantors had at all times since the execution of the deed. The grantors knew that McMullen represented that he would drill a well on their farm in a short time. That was the thing they discussed with him. It was what they wanted and insisted upon. Julia Moczygemba testified that she and her husband waited for and discussed McMullen and the well for a year, for five years, and for ten years, and finally quit talking about it.

What, then, are the things that the grantors knew? They knew that McMullen said they were signing a lease. They knew also, under all of the undisputed evidence, that

McMullen said he would begin drilling a well soon. They knew that the reason they signed the instrument was to obtain an oil well, not in the remote future, but soon. They knew, as time passed for the next two and a half decades, not only that no well was drilled, but also that it was not drilled soon. These matters are important with respect to the knowledge that the Moczygembas had as a matter of law.

Wise v. Anderson, Tex., 359 S.W.2d 876, was decided while this case was on appeal. The lessor in that case relied upon two fraudulent statements as grounds for the cancellation of an oil lease. The lessee represented that he would commence a well in ninety days, and that he had leased enough surrounding land to obtain a drilling permit. The Court held that the grantor knew that a well was not commenced in ninety days, and that fact was enough to compel an inquiry, which, if made, would have shown that the lease had no provision which required drilling in ninety days. Quoting Glenn v. Steele, 141 Tex. 565, 61 S.W.2d 810, the Court said that it was "knowledge of facts that would cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud." The Court of Civil Appeals, 345 S.W.2d 803, held that lessor's knowledge of the one fraud was "as a matter of law, sufficient to put him on notice of the truth or falsity of the other fraudulent representations relied upon by appellee, and of the fraud itself." The opinion of the Court of Civil Appeals in Steele v. Glenn, 57 S.W.2d 908, affirmed, 141 Tex. 565, 61 S.W.2d 810, also states that knowledge of one fraud puts one on inquiry about all other representations. The application, therefore, is that the Moczygembas had knowledge that McMullen had represented to them that he would begin drilling soon, but he did not. Knowing this, they did nothing, made no inquiry, and did not seek to read the instrument they signed, for twenty-six years. The grantors had the same knowledge here that the lessors had in Wise v. Anderson, supra. That knowledge

put them on inquiry about other frauds, which, if pursued, would have shown that they signed a deed and not a lease. In our opinion, the action is barred by limitations as a matter of law.

Reversed and rendered that plaintiff take nothing.